IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| TOMMY PERDUE, | ) |
| | ) |
|     PLAINTIFF, | ) |
| | ) |
| v. | )   CASE NO.: 1:04-cv-1137-MEF |
| | )   (WO-Not Recommended for Publication) |
| PILGRIM PRIDE d/b/a CON AGRA, | ) |
| | ) |
|     DEFENDANT. | ) |

**MEMORANDUM OPINION AND ORDER**

Pursuant to 42 U.S.C. § 1981 and 42 U.S.C. § 2000(e), Tommy Perdue ("Plaintiff") brings this suit against his former employer Pilgrim Pride d/b/a Con Agra ("Defendant") for alleged discrimination on the basis of his race. Plaintiff alleges that Defendant terminated his employment because of his race and because he "dared to defend himself when he was attacked by a white [employee]." Compl. at ¶ 9. This cause is before the court on Defendant's Motion for Summary Judgment and Memorandum of Law in Support (Doc. # 20). For the reasons set forth in this Memorandum Opinion and Order, the motion is due to be DENIED.

**JURISDICTION AND VENUE**

The court exercises subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343(4) (civil rights). The parties do not contest personal jurisdiction and venue, and the court finds adequate allegations in support of

personal jurisdiction and venue.[1]

## STANDARD OF REVIEW

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "An issue of fact is 'genuine' if the record as a whole could lead a reasonable trier of fact to find for the nonmoving party. An issue is 'material' if it might affect the outcome of the case under the governing law." *Redwing Carriers, Inc. v. Saraland Apartments,* 94 F.3d 1489, 1496 (11th Cir. 1996) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex,* 477 U.S. at 323. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the non-moving party has failed to present evidence in support of some element of its case on which it bears the ultimate

---

[1] Defendant allegedly committed the unlawful employment practices at issue in this lawsuit in Coffee County, Alabama. Accordingly, venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2).

burden of proof. *Id.* at 322-23.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). On the other hand, a court ruling on a motion for summary judgment must believe the evidence of the non-movant and must draw all justifiable inferences from the evidence in the non-moving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 255. After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c).

Although this court gave Plaintiff an opportunity to submit argument and evidence in opposition to Defendant's motion for summary judgment, Plaintiff's only response to date was to file a statement that he "cannot oppose" the motion. *See* Doc. # 24. Plaintiff's "response" does not mean that Defendant's motion may automatically be granted. While it would make this court's job considerably easier if it could simply grant summary judgment on every claim that a party fails to address in opposing a motion for summary judgment, the law of this Circuit does not allow this court to take such an approach. *See, e.g., Trustees of*

*Cent. Pension Fund of Int'l Union of Operating Eng'rs & Participating Employers v. Wolf Crane Serv., Inc.,* 374 F.3d 1035, 1039-40 (11th Cir. 2004); *United States v. One Piece of Property, 5800 S.W. 4th Ave., Miami, Fla.*, 363 F.3d 1099, 1101-02 (11th Cir. 2004). This court cannot base the entry of summary judgment on the mere fact that the motion was unopposed but, rather, must consider the merits of the motion, nor can this court deem a claim abandoned by a plaintiff absent some affirmative indication that he no longer wishes to pursue that claim. *Id.* This approach is consistent with the language of the Federal Rules of Civil Procedure. It is clear that when a party makes a properly supported motion for summary judgment, the adverse party may not rest upon its pleadings, which contain mere allegations, or upon mere denials*,* but instead must show through appropriate evidence that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(e). Nevertheless, this same rule recognizes that a court may grant summary judgment when an adverse party does not respond to the summary judgment motion only if it is "appropriate." *Id.* Thus, absent a showing by the movant that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law, a motion for summary judgment, even an unopposed one, must be denied.

## FACTS

The court has carefully considered all deposition excerpts and documents submitted in support of and in opposition to the motion. The submissions of the parties, viewed in the

light most favorable to the non-moving party,[2] establish the following relevant facts:

It is undisputed that Defendant's work rules prohibit fighting or brawling on company premises. It is also undisputed that Defendant's work rules prohibit acting in a disorderly manner or engaging in threatening, intimidating, or coercive behavior. Finally, it is undisputed that pursuant to Defendant's these work rule violations may be punished by the termination of an employee's employment.

On November 26, 2003, Plaintiff, an African-American, was employed in Defendant's chicken processing plant in Enterprise, Alabama. On that date, Plaintiff was working in the stack-off line area of the plant stacking boxes.

Plaintiff talked to a co-worker named Kendrick McNeal ("McNeal").[3] After Plaintiff's conversation with McNeal, another co-worker named Chris Reul ("Reul")[4] approached Plaintiff. It appears from the record that Reul was upset with Plaintiff because he believed that Plaintiff had been distracting McNeal from performing his job. According

---

[2] The record in this case is replete with factual disputes over the events of November 26, 2003. Plaintiff's deposition testimony includes one account. Defendant has submitted unsworn witness statements taken during an internal plant investigation. These statements appear to conflict with each other and with Plaintiff's deposition testimony on many points. The narrative on which Defendant's motion for summary judgment is predicated cannot be said to be one which views the evidence in the light most favorable to Plaintiff. Indeed, Defendants fail to acknowledge the many factual issues which are in dispute in this case.

[3] Some of the witness statements indicate that Plaintiff was messing with or harassing McNeal, but Plaintiff denies this.

[4] It is undisputed that Reul is not African-American. In his Charge of Discrimination, Plaintiff states that Reul is "White."

to Plaintiff's sworn deposition testimony, Reul approached Plaintiff with a threatening demeanor and made threatening remarks including what Plaintiff perceived as a racial slur.[5] Plaintiff responded by saying "You're not going to do nothing to me." Plaintiff admits that he and Reul had an altercation in which there was pushing, but denies that he hit Reul or that Reul hit him.[6] Plaintiff's account of the altercation is confirmed by the witness statement of at least one of the employee witnesses from whom Defendant took a statement as part of its investigation. Plaintiff denies pushing anyone other than Reul. He does admit that others approached him and Reul in an attempt to keep the men from fighting. He also admits that he pulled his arms free when someone tried to hold them because he wanted to be able to defend himself. Plaintiff specifically denies shoving his supervisor Chris Wheeler ("Wheeler").[7]

Defendant's Human Resources Supervisor at the Enterprise plant was on vacation on November 23, 2006. Consequently, Defendant's Human Resources Manager for the Enterprise plant, James Ponce de Leon ("Ponce de Leon"), was the one to handle the Defendant's investigation into the incident between Reul and Plaintiff. Upon learning about the incident, Ponce de Leon put Plaintiff and Reul in separate offices and began his

---

[5] According to Plaintiff, Reul said "I am going to whip your black motherfucking ass" or "I am going to whip your motherfucking black ass."

[6] Some witnesses told Defendant that Plaintiff hit Reul in the face.

[7] Wheeler contends that Plaintiff shoved him when Wheeler tried to break up the altercation.

investigation. Ponce de Leon asked Wheeler what he had witnesses. Ponce de Leon then interviewed Reul. During this interview, Ponce de Leon observed what he believed were marks on Reul's face that would be consistent with him having been struck by Plaintiff as Wheeler had told Ponce de Leon. Next, Ponce de Leon interviewed Plaintiff. Plaintiff denied making any harassing statements to McNeal, striking Reul, or shoving Wheeler. Plaintiff told Ponce de Leon that Reul directed racial remarks towards him and punched him.[8] Ponce de Leon went back and questioned Reul about Plaintiff's allegations and Reul denied them.

Ponce de Leon suspended Reul and told him to return to work on November 28, 2003. Ponce de Leon explained that in that time, he would continue his investigation and determine the final discipline to be imposed consistent with Defendant's policies. Ponce de Leon also suspended Plaintiff, but for a longer period. Ponce de Leon told Plaintiff not to return to work until December 1, 2003. Again, Ponce de Leon explained that he would continue his investigation into the altercation and determine the final discipline after the investigation was complete. Ponce de Leon contends that he imposed a longer suspension on Plaintiff than on Reul because he believed that Plaintiff had struck Reul in the face and shoved Wheeler. There is no mention of any reason for the length of the suspensions in the suspension paperwork.

---

[8] It appears from Plaintiff's deposition testimony that he no longer claims that Reul hit him.

After suspending Reul and Plaintiff, Ponce de Leon obtained statements from seven other witnesses. Based on this investigation, Ponce de Leon now says that he developed an honest belief that Plaintiff physically struck Reul in the face and shoved Wheeler, a supervisor. Based on this belief, Ponce de Leon decided to terminate Plaintiff's employment. Ponce de Leon contends that the termination of Plaintiff's employment was not based on his race. Ponce de Leon also decided that he would not terminate the employment of Reul. When Reul returned from his suspension on November 28, 2003, Defendant gave him a final written warning for his involvement in the incident with Plaintiff. On December 1, 2003, Defendant terminated Plaintiff's employment. The documentation of this personnel action sets forth the following rationale for the employment action:

> On 11-26-03 you were involved in an altercation wherein you physically assaulted another associate. You are being advised that this type of behavior is not acceptable in the workplace and as a result of your actions, we are proceeding with termination of your employment.

No mention is made in the documentation of Plaintiff shoving Wheeler. Additionally, there is no mention of any consideration of Plaintiff's previous suspension for another workplace fight years earlier. Indeed, Ponce de Leon makes no mention of Plaintiff's historical record as having had any bearing on Defendant's decision to terminate Plaintiff's employment.

On April 26, 2004, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). In his Charge, Plaintiff declared under penalty of perjury that

8

> On or about November 26, 2003, [he] was involved in an altercation with a White co-worker because he was making racial slurs towards me. [Plaintiff] was suspended for three days and [the White co-worker] was not. On December 1, 2003, [Plaintiff] returned to work and was terminated and [the White co-worker] was not, even though, he was the one to initiate the situation. The reason given for the action was misconduct.

Plaintiff ended his Charge, by stating his belief that he was discriminated against because of his race. On November 24, 2004, Plaintiff filed his lawsuit.[9] He seeks declaratory relief, equitable relief, and money damages, including attorney's fees and costs.

## DISCUSSION

**A. Plaintiff's Racially Hostile Work Environment Claim**

It is not at all clear to this court that the Complaint contains a claim for a racially hostile work environment. Nevertheless, Defendant argues that to the extent that Plaintiff does claim that he was racially harassed this claim fails as a matter of law. Defendant correctly notes that it had promulgated a policy against harassment of which Plaintiff was aware. No party has seen fit to provide the court with a copy of that policy. Accordingly it is impossible for this court to say as a matter of law that Plaintiff failed to make any complaint pursuant to that policy, as Defendant contends. The evidentiary record before this court indicates that Plaintiff complained to Ponce de Leon that Reul had directed racial slurs at him on November 26, 2003. It is Ponce de Leon's testimony that he asked Reul about

---

[9] Although it is not apparent from the record before this court, Plaintiff presumably received a dismissal and notice of his right to sue from the EEOC at some point prior to his filing suit.

9

these alleged slurs. Without the policy, the court cannot assess whether Plaintiff's complaint to Ponce de Leon was a report pursuant to the policy. On the record before it, the court cannot say that Plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise as the law requires. Because Defendant's sole basis for seeking summary judgment on a racial hostile work environment claim[10] is dependent on such a finding, the motion for summary judgment is due to be DENIED.

## B. Plaintiff's Disparate Treatment Claim

Plaintiff claims that the disciplinary suspension and the termination of his employment constitute actionable disparate treatment on the basis of race. In evaluating disparate treatment claims supported by circumstantial evidence,[11] courts within this Circuit and elsewhere rely on the framework established by the United States Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973) and *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248 (1981). *See, e.g., Wilson v. B/E Aerospace, Inc.,* 376 F.3d 1079, 1087 (11th Cir. 2004).

---

[10] The court is not at all convinced that the Complaint actually contains sufficient allegations to support a claim for a racially hostile environment. Moreover, the court is not implying that such a claim would be viable under the Eleventh Circuit's legal standards. At best, Plaintiff's testimony is that Reul made a threat to beat him up that included a reference to Plaintiff's race. Nevertheless, Defendant has not, by its motion, called upon the court to address these other possible grounds for judgment as a matter of law in Defendant's favor.

[11] Although disparate treatment claims may also be established through direct evidence, no such evidence exists in this case.

> Under this framework, the plaintiff first has the burden of establishing a prima facie case of discrimination, which creates a rebuttable presumption that the employer acted illegally. A plaintiff establishes a prima facie case of disparate treatment by showing that [he] was a qualified member of a protected class and was subjected to an adverse employment action in contrast with similarly situated employees outside the protected class. The methods of presenting a prima facie case are not fixed; they are flexible and depend to a large degree upon the employment situation.

*Id.* (internal citations omitted). Once a plaintiff establishes a prima facie case, the employer must articulate a legitimate, non-discriminatory reason for its actions. *Id.* The employer has a burden of production, not a burden of persuasion, and it need not persuade the court that it was actually motivated by the proffered reasons. *Id.*

If an employer satisfies its burden by articulating a non-discriminatory reason, it rebuts the presumption of discrimination created by the prima facie case. *Id.* The burden of production then shifts to the plaintiff to offer evidence that the alleged reason of the employer is a pretext for illegal discrimination. *Id.* The plaintiff may satisfy this burden of showing pretext by persuading the court either directly that a discriminatory reason more than likely motivated the employer or indirectly that the proffered reason for the employment decision is not worthy of belief.[12] *See, e.g., Burdine,* 450 U.S. at 256. The plaintiff may

---

[12] The court should evaluate whether the plaintiff demonstrated "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Combs v. Plantation Patterns*, 106 F.316 1519, 1538 (11th Cir. 1997). Indeed, inconsistencies in an employer's testimony about the reason for the adverse employment action can be evidence of pretext. *See, e.g., Hurlbert v. St. Mary's Healt Care Sys., Inc.,* 439 F.3d 1286, 1298-99 (11th Cir. 2006) ("We have recognized that an employer's failure to articulate and

accomplish this in a number of ways. Recognized ways of establishing pretext in cases involving the termination of an employee for alleged violation of a work rule include a showing by the plaintiff either that she did not violate the work rule or that, if she did, other employees not within the protected class who engaged in similar acts were not similarly treated. *See, e.g., Anderson v. Savage Labs., Inc.,* 675 F.2d 1221, 1224 (11th Cir. 1982).

In support of its motion, Defendant first argues that Plaintiff cannot establish a *prima facie* case because he cannot establish that Defendant treated him less favorably than a similarly situated employee outside of his protected class. It is obvious from Plaintiff's Complaint, EEOC Charge of Discrimination and deposition testimony that he contends that Defendant treated him less favorably than it treated Reul after the altercation. Defendant's argument that Reul and Plaintiff are not similarly situated is predicated on facts that are in dispute in this action. In the court's view, a reasonable jury could find that Reul is a similarly situated employee outside of Plaintiff's protected class who engaged in similar conduct, but

---

consistently the reason for an employee's discharge may serve as evidence of pretext."); *Damon v. Fleming Supermarkets of Fla.,* 196 F.3d 1354, 1366 & n.6 (11th Cir. 1999) (where in context of summary judgment submissions employer cites additional and previously unmentioned grounds for termination decision, employee may have sufficient evidence of pretext to require denial of summary judgment); *Bechtel Constr. Co. v. Sec'y of Labor,* 50 F.3d 926, 935 (11th Cir.1995) (in proceeding before ALJ, employer gave plaintiff's attitude as reason for termination, but on appeal employer claimed reasons were plaintiff's job performance and medical condition); *Corbin v. Southland Int'l Trucks,* 25 F.3d 1545, 1550 (11th Cir. 1994) (fact that employer's documentation from the time of the challenged adverse employment action was not consistent with the employer's later explanation of the reason for the employment action constituted some evidence of pretext on which plaintiff could rely).

received different discipline.[13]  Thus, when the facts are viewed in the light most favorable to Plaintiff, the court cannot find that Plaintiff has failed to establish a *prima facie* case.

Next Defendant argues that it is entitled to summary judgment on Plaintiff's disparate treatment claim because Plaintiff cannot adduce competent evidence that Defendant's proffered legitimate, non-discriminatory reason for the disciplinary actions taken against Plaintiff is a pretext for discrimination.  Defendant argues that after conducting his investigation, Ponce de Leon had an honest, good faith belief that Plaintiff struck Reul in the face and shoved Wheeler, his supervisor.  Defendant further argues that even if the belief that Plaintiff violated company policy by striking Reul is factually incorrect, an employer's good faith belief that an employee violated a work rule can constitute a non-discriminatory reason for termination.

While the court accepts the legal basis for Defendant's arguments, the argument itself misses the point.  This case presents an occasion where there are clear issues of fact as to whether or not Plaintiff engaged in the conduct for which he was terminated.  Indeed, the evidentiary record is such that a reasonable jury might conclude that Ponce de Leon's belief that Plaintiff engaged in certain violations of work rules is not a good faith belief.  This is especially true in this case because the third party witness statements do not all support the conclusion Ponce de Leon reached.  Moreover, the fact that Defendant's decisionmaker in

---

[13] It is undisputed that Defendant did not terminate Reul, but did terminate Plaintiff after the workplace altercation.

the termination decision now gives a different and broader rationale for the challenged employment decisions than the rationale given for the decision at the time, especially in the paperwork documenting the decision, creates a genuine issue of material fact regarding whether that decision was pretextual. After applying the appropriate legal standards to the evidence before it, the court must find that Defendant's motion for summary judgment on Plaintiff's disparate treatment claim is due to be DENIED.

### C. Plaintiff's Claim for Back Pay and Front Pay

Defendant contends that Plaintiff is not entitled to back pay or front pay damages as a matter of law. Defendant correctly notes that a plaintiff seeking either back pay or front pay damages has a duty to mitigate those damages by exercising reasonable diligence to locate other suitable employment and maintain a suitable job once it is located. Defendant contends that the unconverted evidence demonstrates that Plaintiff failed to mitigate his damages by remaining unemployed for ten months after the termination of his employment with Defendant and by failing to exercise reasonable diligence in locating suitable employment. Having reviewed Plaintiff's testimony, the court cannot find as a matter of law that when that testimony is viewed in the light most favorable to Plaintiff no reasonable jury could find that Plaintiff mitigated his damages. Accordingly, the court cannot say that Defendant is entitled to judgment as a matter of law on these damages claims. The motion for summary judgment is due to be DENIED to the extent it is predicated on Plaintiff's failure to mitigated his damages.

## CONCLUSION

Defendant's Motion for Summary Judgment and Memorandum of Law in Support (Doc. # 20) is DENIED.

DONE this the 14th day of August, 2006.

                                               /s/ Mark E. Fuller
                                      CHIEF UNITED STATES DISTRICT JUDGE